UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL P. MULLEN,

    Plaintiff,

v.

DEPARTMENT OF
VETERANS AFFAIRS,

    Defendant.
_____/

Case No.  2:23-cv-0003

Hon.  Jane M. Beckering
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I.  Introduction**

This Report and Recommendation (R&R) addresses the Department of Veterans Affairs' motion to dismiss under Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, or, alternatively, for summary judgment under Rule 56. (ECF No. 5.)

*Pro se* Plaintiff Michael P. Mullen filed a complaint asserting a negligence cause of action against his employer, Defendant Department of Veterans Affairs.[1] (ECF No. 1.) Mullen's complaint asserts that he is the victim of "violations of state and federal statute, failure to follow past practice and VHA handbook guidance [and] false statements by multiple individuals." (ECF No. 1, PageID.4.) His complaint

---

[1]     Mullen's complaint is entitled "Complaint For A Civil Case Alleging Negligence (28 U.S.C. § 1332; Diversity of Citizenship)." (ECF No. 1, PageID.1.)

also requests $1,741.49 in lost wages, conversion of authorized absences, restoration of sick leave and $15,852,000 in punitive damages. (*Id.*) Beyond a brief introduction, Mullen's six-page complaint is short on details.[2] Mullen included with his complaint some 14 forms he filed at the Oscar G. Johnson Veterans Administration Medical Center (VAMC) in Iron Mountain, Michigan, relating to events from April 4, 2022 to August 23, 2022. (ECF No. 1-1, PageID.7-41.) These complaint forms appear to contain more of the details of Mullen's allegations. Each form appears to be signed by Mullen under penalty of perjury and dated August 14, 2022, and each form asserts alleged wrongful conduct by an individual who is in a position of authority over Mullen at the Oscar G. Johnson, VAMC.

It appears that Mullen is asserting a claim (or claims) under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (FTCA). The FTCA claims that Mullen made at the administrative level allege humiliation and stress from a hostile work environment arising after he was allegedly reassigned to a different job pending the results of an investigation of his alleged misconduct. (*Id.*) Mullen alleged that the events surrounding the investigation caused him stress and anxiety, and that he was being treated unfairly. Mullen made monetary damage requests between $10,000 and $522,000 in his administrative claims. (*Id.*)

---

[2] Rule 8 of the Federal Rules of Civil Procedure provides that a claim for relief must include a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for relief. Fed. R. Civ. P. 8(a)(1-3). Each allegation "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

The Department of Veterans Affairs – the only Defendant identified by Mullen – filed a motion to dismiss under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, or, alternatively, for summary judgment under Rule 56. The undersigned is not unsympathetic to Mullen's employment-related concerns. Nevertheless, it is respectfully recommended that the Court grant Defendant's motion to dismiss because Mullen has failed to state a claim for relief upon which relief may be granted for a claim under the FTCA. Furthermore, Mullen has failed to plead an actionable negligence claim that could be brought against the United States under the FTCA. Finally, the Court lacks subject matter jurisdiction because Mullen's complaint fails to state a federal cause of action against the United States.

Mullen has sued his employer, the Department of Veterans Affairs, which is not a proper defendant for a case under the FTCA. Mullen has alleged that he was subjected to a hostile work environment that caused him emotional distress after he was accused of misconduct and then subjected to further proceedings, including the placement in a different department pending an investigation into the misconduct charge. Mullen argues that the investigation was improper, violated criminal laws, and that he was targeted by a conspiracy amongst employees at the VAMC. He also alleges that he was defamed and treated unfairly and that his own allegations against his supervisor were never investigated. Mullen's complaint, although alleged as a negligence cause of action, is really an employment dispute with allegations that could potentially raise intentional tort claims. The United States has not waived its sovereign immunity over the types of intentional torts that Mullen has alleged.

3

Therefore, it is the recommendation of the undersigned that the Court grant Defendant's motion and dismiss this case.

## II. Motion to Dismiss Standard

Defendant has filed a motion to dismiss or alternatively for summary judgment. This R&R will address only Defendant's motion to dismiss. The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal

4

citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

Alternatively, Defendant moves under Fed. R. Civ. P. 12(b)(1) due to lack of subject matter jurisdiction because Mullen's claims are barred by sovereign immunity. Rule 12(b) provides that: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1). As the plaintiff in this case, Mullen bears the burden of establishing that this Court has jurisdiction. *Peterson v. City of Grand Rapids*, 182 F. Supp. 3d 750, 753 (W.D. Mich. 2016) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996)).

Plaintiff is proceeding *pro se*. As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

### III. Discrimination

Defendant argues that the Court should interpret Mullen's claims as employment discrimination causes of action. If characterized as such, then dismissal of the complaint is required because Mullen never exhausted any

discrimination claims before he filed his federal complaint. (ECF No. 6, PageID.56-57.)

Congress waived sovereign immunity by allowing federal employees to bring employment discrimination lawsuits upon satisfaction of "rigorous administrative exhaustion requirements and time limitations." *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (*quoting Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976).)

> Congress gave the EEOC initial enforcement responsibility for employment discrimination claims brought under Title VII. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Accordingly, a plaintiff must first file an administrative charge with the EEOC within a certain time that alleges the wrongful conduct. *Id.* "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' " *Id.* (quoting 29 C.F.R. § 1601.12(b) ). A plaintiff must exhaust administrative remedies before filing suit in federal court. *Id.* at 362. To properly exhaust, a plaintiff must: "(1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')." *Granderson v. Univ. of Michigan*, 211 Fed.Appx. 398, 400 (6th Cir. 2006).

*Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

The EEOC's "investigatory and conciliatory procedures notify potential defendants of the nature of plaintiffs' claims and provide them the opportunity to settle the claims before the EEOC rather than litigate them." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Mullen has not alleged in his complaint that he exhausted his claims. Instead, Mullen argues that

he is only asserting negligence causes of action under the FTCA. (ECF No. 9, PageID.119.)

### IV. FTCA

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. But by the 1940s, Congress was considering hundreds of such private bills each year. . . .
>
> "In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees" acting within the scope of their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. . . . Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are "actionable under § 1346(b)."

*Brownback v. King*, 141 S. Ct. 740, 745-46 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475–476 (1994) (other internal citations omitted)).

Mullen has asserted a negligence claim against the Department of Veterans Affairs. (ECF No. 1.) The Federal Tort Claims Act "allows a plaintiff to bring certain state-law tort claims against the federal government." *Brownback*, 141 S.Ct. at 745 (citing 28 U.S.C. § 2674). Under the FTCA, the United States waives its sovereign immunity, and grants exclusive jurisdiction for civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the

7

Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). However, there is an exception to the general waiver of immunity, and accordant grant of jurisdiction, for any claim arising out of an assault, battery, false arrest, or false imprisonment. "The provisions of . . . [28 U.S.C. § 1346(b)] shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, [or] false arrest . . . ." 28 U.S.C. § 2680(h).

In addition, before bringing a claim under the FTCA, a plaintiff must exhaust administrative remedies. "The filing of an administrative claim is jurisdictional and is an absolute, non-waivable prerequisite to maintaining a civil action against the United States for damages arising from the alleged wrongful acts of a federal employee." *Tornichio v. United States*, 263 F. Supp. 2d 1090, 1099 (N.D. Ohio 2002) (*citing McNeil v. United States*, 508 U.S. 106, 113 (1993)); *see also* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."). "Failure to exhaust administrative remedies deprives a federal court of jurisdiction over the [FTCA] claim." *Holt v. Morgan*, 79 F. App'x 139, 141 (6th Cir. 2003).

Finally, the only proper defendant to a suit under the FTCA is the United States. "[F]ederal agencies are immune from tort suits." *Johnson v. O'Neill*, 130

F. App'x 1, 4 n.2 (6th Cir. 2005). "Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction." *DMC-Memphis, Inc., v. Mutual of Omaha Ins. Co*, 105 Fed App'x 671, 675 (6th Cir. 2004) (*citing Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990)).[3]

As noted in *Brownback*, 141 S.Ct. at 746, an FTCA claim is actionable if it alleges the six elements in Section 1346(b):

(1) that the claim is against the United States,

(2) for money damages,

(3) for injury or loss of property, personal injury, or death,

(4) caused by the negligent or wrongful act or omission of an employee of the United States,

(5) while acting within the scope of his office or employment, and

(6) under circumstances, where the United States, if a private person, would be liable to the claimant in accordance with the law where the act or omission occurred.

---

[3] A tort action may be brought against a federal employee under limited circumstances. If the federal employee acted within their scope of employment, then the action must be brought under the FTCA against the United States. *Levin v. United States*, 568 U.S. 503, 507, 510-511 (2013). Where the federal employee acted outside the scope of their employment, then a suit may be brought against the employee if there exists some other ground for federal jurisdiction. 28 U.S.C. § 2679(b)(1); *see Matthews v. United States*, 805 F. Supp. 712, 715 (E.D. Wis. Oct. 8, 1992) ("The court concludes, however. . . that when an action is brought against a federal employee pursuant to some other grant of jurisdiction—say, diversity jurisdiction—it may be converted into an FTCA case upon the Attorney General's certification.").

> [A] plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for the court to have subject matter jurisdiction over the claim. That means a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction.

*Brownback*, 141 S.Ct. at 749. In the opinion of the undersigned, Mullen has failed to plead a claim upon which relief may be granted against the United States of America.

First, Mullen's claim is against the Department of Veterans Affairs. Mullen did not name the United States as a Defendant. Although the FTCA waives sovereign immunity for some lawsuits against the United States, that waiver does not extend to lawsuits against federal agencies. *See* 28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title . . . .") "An FTCA claim naming only an agency . . . fails to bestow jurisdiction." *Adu-Beniako v. Reimann*, 2022 WL 4538372, at *3 (July 12, 2022). "[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback*, 141 S. Ct. at 749. "[A] plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." *Id*.

The Department of Veterans Affairs cannot be sued under the FTCA. *Chomic v. U.S.*, 377 F.3d 607, 608 (6th Cir. 2004). The bottom line is that Mullen failed to

name the United States as a Defendant and the Department of Veterans Affairs is not a proper Defendant in this action. Thus, this Court lacks subject matter jurisdiction to hear this case.

Second, Mullen has failed to properly plead a negligence cause of action under state law. To establish a prima facie case of negligence under Michigan law, a plaintiff must plead (1) the defendant owed a legal duty to plaintiff, (2) the defendant breached that duty, (3) plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of plaintiff's damages. *Powell-Murphy v. Revitalizing Auto Communities Environmental Response Trust*, 333 Mich. App., 234, 243 (2020). Mullen's complaint alleges that on April 4, 2022, his rights were violated by Defendant for the following reasons:

> The acts or omissions caused or contributed to the cause of the plaintiff's injuries by *(explain)*
> Violations of state and federal Statute.
> Failure to follow past practice and VHA handbook guidance
> False statements by multiple individuals

(ECF No. 1, PageID.4.)

Mullen does not cite any state or federal statute that was allegedly violated, and he does not explain how any state or federal statute was violated by Defendant. Mullen fails to allege how Defendant breached a legal duty owed to him from a "past practice" or from the "VHA handbook guidance." Further, Mullen has failed to allege the nature of the false statements he said were made, and how those statements involved a breach of a legal duty. In the opinion of the undersigned,

11

Mullen's complaint fails to plead a negligence cause of action upon which relief may be granted.

Moreover, even Mullen's fourteen (14) agency claims forms, which he attached as exhibits to his complaint, fail to plead an appropriate cause of action for negligence. Mullen says that on April 4, 2022 (the day Mullen alleges in his complaint that his cause of action accrued), Dr. Coughley thanked staff in Mullen's presence for letters that they had written regarding Mullen's reassignment from the Chief of EMS to the housekeeping staff. (ECF No. 1-1, PageID.7 (first claim form).) Mullen describes this action as creating a hostile work environment. (*Id.*) Mullen's remaining attachments relate to events that occurred after April 4, 2022.

Mullen says that on April 6, 2022, Trinity Cazzola called him over to fill out paperwork, but Mullen told her it was Friday, and he needed his allotted ten minutes to change. (*Id.*, PageID.9 (second claim form).) When Mullen asked if he could wait until Monday, Cazzola allegedly raised her voice and told him he had to do what she said. (*Id.*) He responded that he was leaving. (*Id.*) Mullen says that Cazzola then stated that "you haven't listened to me all night." (*Id.*) Mullen says he felt humiliated, stressed, and anxious causing him to go to urgent care the next day due to high blood pressure and chest pains. (*Id.*)

On April 9, 2022, Mullen says the acting EMS chief called him into the AOD's office, and in the presence of the AOD[4], told Mullen that he was being detailed to an outside department pending the results of his misconduct investigation. (*Id.*,

---

[4] Mullen fails to provide a definition of this acronym.

PageID.11 (third claim form).)   Mullen describes this as "extremely inappropriate", causing him to feel humiliated, stressed, and anxious.   (*Id.*)   Mullen further alleged that he was told by Acting Medical Center Director Collins that he had displayed "aggressive body language" toward a supervisor.   (*Id.*, PageID.13.)   Mullen says that this was libel and damaged his reputation.   (*Id.*)

On April 11, 2022, Mullen complained that a Disruptive Behavior Report was filed against him, and past practice was being violated because he was not interviewed.   (*Id.*, PageID.14 (fourth claim form).)   This continued to cause Mullen humiliation, stress, and anxiety due to the shock of being investigated.   (*Id.*) Mullen further alleged that a conspiracy existed against him because board members had a personal bias against him.   (*Id.*, PageID.16.)

On April 25, 2022, Mullen says that after he was interviewed for his alleged misconduct, Chris Mapps falsely told him that he would forward any documentation Mullen provided to support his statement.   (*Id.*, PageID.17 (fifth claim form).) Mapps also told Mullen that Chandra Coughley had prepared the questions for investigators.   (*Id.*)

On April 26, 2022, Mullen met with Chandra Coughley who told him she was a neutral party, but when he pointed out inconsistencies in Trinity Cazzola's statement, Coughley rebutted his statements and asked him if he was willing to apologize to Cazzola.   (*Id.*, PageID.20 (sixth claim form).)   Mullen says that this caused him additional mental anguish.   (*Id.*)

13

Mullen says that on May 3, 2022, he was called to Pat Pamquist's office. (*Id.*, PageID.22 (seventh claim form).) Cazzola was in the office when he arrived. (*Id.*) Mullen said he felt uncomfortable, so he asked for a union representative. (*Id.*) Pamquist left to get another chair leaving him alone with Cazzola. (*Id.*) This caused Mullen anxiety, so he left until Mr. Mapps arrived. (*Id.*) Upon return to the office, he was given two written warnings from Cazzola. (*Id.*, PageID.24.) Mullen says that the one – for not following directions – contained false statements which was "an attempt to stack charges" and "shows a conspiracy between Mr. Cazzola and Mr. O'Malley." (*Id.*)

On June 24, 2022, Mullen says he filed a claim based upon his investigation being completed and unsubstantiated. (*Id.*, PageID.25 (eighth claim form).) Mullen believed that he was targeted by Cazzola, Palmquist, Coughley, and others. (*Id.*) This caused him further mental anguish. (*Id.*)

Mullen's July 4, 2022 claim form says that he sent an email to Adam Steinbrecher complaining of a conspiracy to have him removed from the department and that others were accessories after the fact. (*Id.*, PageID.27 (ninth claim form).)

On July 7, 2022, Mullen says that he sent Steinbrecher and Smith-Freshwater an email to inform them he had contacted the FBI because he believed several violations of federal criminal law had occurred based upon the conduct of the staff. (*Id.*, PageID.29 (tenth claim form).) Mullen says that this caused him further mental anguish due to the lack of an investigation into Cazzola, Palmquist, Mapps, Bal, Schoen, Shields, Eyers, O'Malley, and Coughley. (*Id.*)

On July 14, 2022, Mullen met with Smith-Freshwater and Steinbrecher to discuss his return to housekeeping. (*Id.*, PageID.31 (eleventh claim form).) Mullen insisted that he had evidence that Cazzola had falsified an official document, but Smith-Freshwater would not allow him to present his evidence. (*Id.*, PageID.31-33.) This caused Mullen further mental anguish because he believed he was targeted, and senior leadership failed to address his allegations. (*Id.*, PageID.31.)

On July 19, 2022, Mullen says that he received a verbal warning for talking to an employee who had asked him to stop, and he had to endure a lecture on work-place harassment. (*Id.*, PageID.34 (twelfth claim form).) Then, Mullen says that the employee he had previously spoken with and allegedly harassed, told him that she had never made a complaint against him. (*Id.*, PageID.36.) Mullen says that this establishes a conspiracy against him, but his supervisor was still not investigated regarding his allegations. (*Id.*) Mullen complains that this toxic situation caused him to lose sleep and affected his mental health. (*Id.*, PageID.34.) He says he felt targeted and had lost trust. (*Id.*)

On August 9, 2022, Mullen says he was questioned regarding the verbal warning he received on July 19, 2022, but he informed Cazzola that he needed to go over his testimony and make corrections. (*Id.*, PageID.37 (thirteenth claim form).)

Finally, Mullen alleged that on August 23, 2022, Acting Chief Steinbrecher had a conversation with him regarding the volume of his music on his phone. (*Id.*, PageID.41 (fourteenth claim form).) Mullen said that none of his own complaints

appear to have been addressed and he continued to feel targeted in a hostile work environment.  (*Id.*)

Defendant argues that Mullen is asserting employment discrimination allegations but has failed to properly plead employment discrimination in his complaint.  (ECF No. 6, Page56-60.)   In response, Mullen says that he is asserting a negligence action in his complaint and that he is not asserting employment discrimination claims.   (ECF No. 9, PageID.119.)

Giving Mullen the benefit of the doubt, and reading his complaint liberally, the undersigned concludes that Mullen has failed to state a claim upon which relief may be granted.   Even if Mullen had named the proper defendant in his complaint, his complaint still fails to state a claim for a negligence cause of action under the FTCA.

Mullen has alleged that false statements were made during an improper investigation against him for misconduct, that he was defamed and the target of a conspiracy, and that his superiors at the VA failed to investigate his allegations of impropriety.   In the opinion of the undersigned, Mullen's allegations, although couched in negligence, are better construed as intentional torts.

Mullen's allegations are not actionable claims under the FTCA.   The United States has not waived sovereign immunity for all tort claims.   *Brownback*, 141 S.Ct. at 745.   The FTCA does not waive sovereign immunity for claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  29 U.S.C. § 2680(h).   "Congress [in waiving sovereign immunity in the

16

FTCA] intended to exclude claims arising from such intentional torts committed by Government employees." *United States v. Shearer*, 473 U.S. 52, 57 (1985). A plaintiff cannot avoid the reach of § 2680 by framing the complaint in terms of negligence in an attempt to characterize his cause of action as something other than an intentional tort. *Id.* at 55. Finally, Mullen's conspiracy allegations necessarily fail because his underlying allegations in support of his conspiracy claims are not actionable against the United States. *See Advocacy Organization for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003) ("Because plaintiffs failed to establish any actionable underlying tort, the conspiracy claim must also fail.").

## V.  Recommendation

It is respectfully recommended that the Court grant Defendant Department of Veterans Affairs' motion to dismiss and dismiss Plaintiff Mullen's complaint.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   October 23, 2023                                    /s/ *Maarten Vermaat*
                                                                           MAARTEN VERMAAT
                                                                           U.S. MAGISTRATE JUDGE